Joshua C. Braddock, Esq. (SBN 295604)
Daniel W. Turek, Esq. (SBN 318797)
BRADDOCK LAW APC
josh@braddocklawapc.com
110 West A Street, Suite 1075
San Diego, California 92101
Phone: 619.501-3619 / Fax: 619.923-3727

Attorney for Plaintiff, ROE, a minor, by and through
her Guardian ad Litem, JUSTIN SLAGLE

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROE, a minor, by and through her Guardian ad Litem, JUSTIN SLAGLE<br><br>Plaintiff,<br><br>vs.<br><br>GROSSMONT UNION HIGH SCHOOL DISTRICT, APRIL BAKER, an individual, JOSH REIDERER, an individual, ROBIN BALLARIN, an individual, MICHAEL FALCOMER, an individual, JOHN DOE, a minor, HEIDI AND GARRETT GROSCH, parents AND DOES 1-10, inclusive.<br><br>Defendants, | Case No.: **'19 CV 1966 CAB BGS**<br><br>**COMPLAINT FOR**<br><br>**(1) VIOLATION OF TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972;**<br><br>**(2) VIOLATION OF CALIFORNIA EDUCATION CODE SECTIONS 200 ET SEQ.**<br><br>**(3) VIOLATION OF CONSTITUTIONAL RIGHTS, 42 USC 1983;**<br><br>**(4) NEGLIGENT FAILURE TO PERFORM MANDATORY DUTIES UNDER GOV. CODE §§ 815.6 AND 820 INCLUDING NEGLIGENT SUPERVISION AND TRAINING,**<br><br>**(5) VIOLATION OF UNRUH ACT;**<br><br>**(6) SEXUAL BATTERY;**<br><br>**(7) VICARIOUS LIABILITY OF PARENTS UNDER CALIFORNIA CIVIL CODE 1714.1**<br><br>**DEMAND FOR JURY TRIAL** |

////

---

1

COMPLAINT FOR DAMAGES AND JURY DEMAND

**JURISDICTION AND VENUE**

1.    Jurisdiction of Plaintiff's federal law claims is founded upon 28 USC1331 (federal question jurisdiction), 28 USC 1343(a)(3) (federal civil rights jurisdiction); 42 USC 1983 and 20 USC 1681 et seq. (Title IX, Education Amendments of 1972).

2.    Defendant GROSSMONT UNION HIGH SCHOOL DISTRICT (hereinafter referred to as "GUHSD") has waived its 11th Amendment immunity with respect to Plaintiff's state law claims.

3.    Plaintiff has complied with the California Government Tort Claims Act, Cal. Govt. Code Section 810 et. seq. and 911.2 including the filing of a late claim. GUHSD subsequently rejected these claims prior to the expiration of the 45-day period.

**PARTIES**

4.    JUSTIN SLAGLE, is and was during all times relevant, a resident of the City of Santee, County of San Diego, California and brings this action as guardian ad litem on behalf of his minor daughter, G.S. (hereinafter referred to as "ROE).  Specifically, JUSTIN SLAGLE was appointed Guardian ad litem of Plaintiff ROE, a minor (hereinafter referred to as "ROE") by order of the above-entitled Court, and is now the qualified and acting Guardian ad Litem of plaintiff for purposes of this action.

5.    ROE is a minor and during all times relevant was, a resident of the City of Santee, County of San Diego, California.

6.    Defendant, Grossmont Union High School District (hereinafter referred to as "GUHSD") is a public entity duly incorporated and operating under California law as a school district.

7.    Defendant, APRIL BAKER ("BAKER") was a vice principal of West Hills High School (hereinafter "WHHS") during the relevant time period. The actions alleged herein by BAKER were taken under color of state law, in the

COMPLAINT FOR DAMAGES AND JURY DEMAND

1 | course of her employment, but also in her individual capacity.

2 |        8.        Defendant, JOSH REIDERER ("REIDERER) was a vice principal of

3 | West Hills High School (hereinafter "WHHS") during the relevant time period.

4 | The actions alleged herein by REIDERER were taken under color of state law, in

5 | the course of his employment, but also in his individual capacity.

6 |        9.        Defendant, ROBIN BALLARIN, was the principal of West Hills High

7 | School (hereinafter "WHHS") during the relevant time period. The actions alleged

8 | herein by BALLARIN were taken under color of state law, in the course of her

9 | employment, but also in her individual capacity.

10 |        10.        Defendant, MICHAEL FALCONER ("FALCONER") was a vice

11 | principal of Santana High School (hereinafter "SHS") during the relevant time

12 | period. The actions alleged herein by FALCOMER were taken under color of state

13 | law, in the course of his employment, but also in his individual capacity.

14 |        11.        Defendants,  HEIDI and GARRETT GROSCH, is and was during all

15 | times relevant the biological parent of S.G. (hereinafter referred to as "JOHN

16 | DOE") and in this capacity were and remain vicariously, jointly and severally

17 | liable for the intentional acts including sexual violence committed by their minor

18 | son,  JOHN DOE, up to the statutory amount of 25,000 (Civil Code Section

19 | 1714.1). Defendants are residents of the City of Santee, County of San Diego,

20 | California.

21 |        12.        Defendant, S.G. (hereinafter referred to as "JOHN DOE") a minor and

22 | biological son of Defendants, HEIDI and GARRETT GROSCH, is and was during

23 | all times relevant a resident of the City of Santee, County of San Diego, State of

24 | California. During all times relevant it is alleged that JOHN DOE committed

25 | egregious acts of sexual battery, sexual assault, forced oral copulation, cyber

26 | bullying, sexting via social media, sexual harassment, sexual discrimination based

27 | on sexual orientation and gender identity discrimination and sexual violence on

28 | ROE.

COMPLAINT FOR DAMAGES AND JURY DEMAND

13.     Defendants, Does 1 through 10, inclusive, are individuals employed by or agents of GUHSD whose true names and capacities are unknown to Plaintiff, who therefore sues such Defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe Defendants

 when ascertained.  Each such Defendant Doe is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

14.     Each Defendant is the agent, servant, and or employee of the other Defendants, and each Defendant was acting in the course and scope of his/ her as an agent, servant, and/or employee of the other Defendants.  The Defendants, and each of them, are individuals, who engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and/or negligent or unlawful activities described in this Complaint, and the Defendants, and each of them, ratified the acts of the other Defendants as described in this Complaint.

15.     Plaintiff alleges upon further information and belief, that each and every individual School District Defendant as aforesaid, when acting as an agent, servant, or employee of GUHSD was negligent in the supervision, investigation and training of each and every said Defendant.

16.     At all times set forth herein, the acts and omissions of each Defendant caused, led and/or contributed to the various acts and omissions of each and all of the other Defendants, legally causing Plaintiff injuries and damages as set forth below.

## **GENERAL ALLEGATIONS**

17.     On January 30, 2018 Plaintiff, ROE, a minor and Freshman of West Hills High School located in Santee, California was the innocent victim of a brutal, pre-meditated gender-based sexual assault and battery committed by Defendant, JOHN DOE, a minor and sophomore at the same high school.  The sexual violence

4

COMPLAINT FOR DAMAGES AND JURY DEMAND

occurred on campus during school hours. Plaintiff, ROE, during all times relevant, had and has a right to be safe on her home school high school campus.

18.    At the time of the sexual violence, assault and battery, there was an egregious lack of adequate and appropriate supervision by Defendant, GUHSD and its school administrators and staff of the students including JOHN DOE on the WHHS campus. Specifically, on the morning of the incident there was insufficient adult-to-student ratio of school staff on campus to appropriately supervise its students due to an off-campus District-wide training. Moreover, Plaintiff is informed and believes and thereon alleges that the area on the West Hills campus where the sexual violence occurred was known by Defendant, JOHN DOE and other WHHS students to lack appropriate supervision even prior to this assault.

19.    At the time of the sexual violence, Defendant, GUHSD and WHHS Hill school administrators including BALLARIN, REIDERER and BAKER exercised substantial control over its high school campus and all students including JOHN DOE.  All WHHS' administrators, staff and students were subject to complying with GUHSD District policies, state and federal anti-sexual discrimination, anti-harassment, anti-retaliation and anti-discrimination statutes and laws and should have been appropriately trained on these policies and regulations.

20.    Specifically, during all times relevant, Defendant JOHN DOE was subject to Defendant, GUHSD and West Hill's disciplinary authority, its policies and procedures surrounding sexual harassment, anti-bullying, sexual assault, sexual and gender- based discrimination and retaliation. Despite Defendant JOHN DOE being subjected to GUHSD's disciplinary authority, Defendant GUHSD failed to comply with its own district policies, state and federal laws governing training its students on sexual harassment and responding to complaints of sexual harassment, bullying, sexual discrimination, retaliation. Specifically, upon receiving actual notice of the  sexual assault and battery, prior bullying and sexual

COMPLAINT FOR DAMAGES AND JURY DEMAND

harassment of JOHN DOE to ROE  and hostile environment on the day it happened, Defendant GUHSD, its administrators, BAKER, REIDERER and BALLARIN failed to perform an unbiased investigation of the allegations against JOHN DOE,  failed to interview with all key relevant witnesses, failed to take *immediate* and effective corrective action, failed to institute interim measures  to protect Plaintiff ROE in violation of its own internal district policies, state and federal laws.  Defendant GUHSD failed to remedy the effects of the sexual assault, sexual harassment, gender-based discrimination and retaliation to Plaintiff ROE. In addition, Defendant GUHSD failed to investigate claims of JOHN DOE's prior dissemination of nude photos and videos to ROE. Moreover, Defendant GUHSD, including BALLARIN, BAKER and REIDERER failed to appropriately train its WHHS students, staff or administrators on student-to-student harassment, what constitutes harassment, sexual assault, discrimination or the appropriate reporting procedures.

21.    Plaintiff, ROE first met Defendant JOHN DOE, son of Defendants HEIDI and GARRETT GROSCH, during her eighth-grade year as she was a friend of JOHN DOE's sister (SG).  Specifically, in the fall of the 2016-2017 school year, the Grosch family transported Plaintiff, ROE, S.G. and JOHN DOE to a WHHS freshman football game where JOHN DOE was to be playing. ROE spoke with JOHN DOE during the car ride both to and from the game.  The Grosch family and ROE watched JOHN DOE play football at a WHHS game that day.

22.    In January of the 2017-2018 school year, Defendant JOHN DOE, a sophomore at WHHS requested that Plaintiff ROE add him to her Snap Chat account, a social media site popular with high school students.  Snap Chat enables its users to message its contacts, post pictures and videos real time. Snap Chat posts, videos, pictures will only be saved if the user affirmatively screenshots or saves the media otherwise the media disappears. However, Plaintiff is informed and believes and thereon alleges that Snap Chat's server can confirm

COMPLAINT FOR DAMAGES AND JURY DEMAND

1   communications occurred between users during any relevant time.

2       23.    Plaintiff, ROE added Defendant, JOHN DOE to her Snap Chat

3   contacts in January of 2018, at the request of JOHN DOE the second week of the

4   second semester of her freshman year at WHHS.  ROE had not seen JOHN DOE

5   since watching his football game the year prior. Plaintiff ROE had been a student

6   of Grossmont Unified School District since elementary school and her father and

7   his relatives had attended West Hills High School dating back to the early 1990's.

8   Plaintiff ROE had a long-standing friendship base at WHHS as she had gone to

9   school with many of the students since elementary school.

10       24.    Beginning in approximately mid-January of 2018, Defendant JOHN

11   DOE began messaging Plaintiff, ROE on Snap Chat first, quite innocently. He

12   would tell her how beautiful she was along with other flattering talk.  However,

13   approximately a week later, the Snap Chat messages and bullying from JOHN

14   DOE became somewhat sexual with JOHN DOE asking her if she would give him

15   a blow job or have sex.   Plaintiff ROE would say "No", say she was not into that

16   and was not comfortable with him asking.  Plaintiff ROE knew the Snap Chats she

17   received were from JOHN DOE in that he would send her pictures of himself. A

18   few days before the sexual assault, JOHN DOE sent her inappropriate nude

19   pictures and videos of himself engaging in self-stimulation and engaged in sexting.

20   ROE advised her best friend E.W. what JOHN DOE had shared. Plaintiff ROE

21   never encouraged JOHN DOE, did not herself send him nude photos, continued to

22   tell him she was uncomfortable with what he was sending her and she did not want

23   to see these videos or pictures. Plaintiff is informed and believed that sexting on

24   the WHHS campus was rampant.

25       25.    Immediately after school on January 29, 2018, JOHN DOE messaged

26   ROE on Snap Chat, asked her if she was still at school and whether she wanted to

27   meet up with him outside of the theater/gym to hang out.  In that ROE planned to

28   attend her girlfriend's soccer game after school she agreed to meet JOHN DOE

COMPLAINT FOR DAMAGES AND JURY DEMAND

1    outside the GYM.  When she arrived at the gym/theater building, JOHN DOE

2    opened the door to the theater foyer to let ROE in the building. After closing the

3    door, he began kissing her, placed his hand on her buttocks and aggressively

4    walked her to the wall of the empty and isolated foyer. He tried to put his hand

5    down her pants and she told him "NO".  She made an excuse that she had to get

6    going.  Over his protests, she left the foyer of the theater/gym and instead of going

7    to the soccer game called her mom to pick her up.

8        26.    That evening, JOHN DOE, who did not live too far from ROE, began

9    messaging ROE on Snap Chat.  ROE invited him over to her home.   Her parent

10   was home and she thought it would be a good idea to get to know him on a non-

11   physical basis and give him the benefit of the doubt.  JOHN DOE told her over

12   Snap Chat that the only way he would come over is if they had sex. ROE thought

13   he was joking and said that was not going to happen.  JOHN ROE said he could

14   not come over.  He then started talking about blow jobs and ROE told him that she

15   was not into that and that she thought she might be gay.  JOHN DOE touted that he

16   would "set her straight".  ROE thought he was joking.

17       27.    Earlier that evening ROE told her friends E.W. and S.B. about JOHN

18   DOE kissing her that afternoon.  E.W. is her best friend and she had confided in

19   her about JOHN DOE and their interaction over Snap Chat over the last several

20   weeks including the videos and pictures he has recently posted. Apparently sexting

21   was rampant at schools throughout the District including WHHS.  Later that night

22   JOHN DOE messaged ROE telling her that S.B. had asked him about he and ROE

23   and JOHN DOE messaged ROE *not to tell anyone about them*.  ROE did not know

24   that S.B. was one of JOHN DOE's best friends.  JOHN DOE also told her not to

25   save any of their snap chats.

26       28.    The next morning, January 30, 2018, ROE was dropped off at school

27   early as she was going to go see a teacher about a project.  The teacher was not in,

28   so she was going to meet up with E.W.  ROE received a Snap chat from JOHN

COMPLAINT FOR DAMAGES AND JURY DEMAND

DOE asking if she was at school and if she wanted to hang out with him.   ROE asked her friend E.W. if she would go with her. E.W. said she could not but that she should be fine. ROE was told to meet him in the foyer of the gym. She walked over to the foyer door.  JOHN DOE opened the door, pulled her in the foyer, and began to aggressively kiss her. JOHN DOE put his hand down her pants, she said "NO", she was not comfortable with this and had limits.  He told her he knows how to push limits.  He then forcefully grabbed her wrist and placed it on his penis. ROE said "No, she did not want to do this" at which point he grabbed her by her shoulder, took her to the staircase, aggressively pushed her down to her knees and began to force her to engage in oral copulation. ROE was frightened, scared, in shock and just wanted to get away from him. JOHN DOE ejaculated on her shoe, the floor, his pants and threatened her that she could not tell anyone about what happened. She was terrified about what he might do. The bell rang and she was able to get away from him. ROE left the gym and hurried to class.  ROE texted her best friend E.W., told her what happened.  ROE immediately deleted and blocked JOHN DOE from her Snap Chat and Instagram social media accounts.  The next few hours were a blur, she attended classes but did not feel present. One of her teachers reached out to her and took her out of class to ask if she was ok.  This teacher was never interviewed by BAKER, BALLARIN or REIDERER or any GUHSD staff member during the initial Title IX investigation.

29.    At break ROE spoke to her aunt about what had happened to her. ROE did not know what to do.  She had never received training from Defendant GUHSD on sexual violence, harassment, sexual harassment, bullying, gender-oriented discrimination. She later learned that her aunt right after break reported the incident to a campus supervisor and ultimately hours later it was reported to Defendant BAKER. At the time of the sexual violence, WHHS administrators were off-campus due to District off-site training. ROE also that day told E.W. and S.B. what had happened. S.B. told her that he was not ok with what JOHN DOE had

COMPLAINT FOR DAMAGES AND JURY DEMAND

done and that earlier that morning JOHN DOE had messaged him "I did it"; and now S.B. knew what he meant. ROE was later pulled out of her Geography class and taken up to the office.

30.    The front office was short staffed of campus supervisors, counselors and administrators that day due to some off-site training so it took some time for someone to meet with ROE.  ROE was told that "no one was there". ROE's parents were not called at this point nor the police. ROE's actual school counsellor was off-site. Ultimately, ROE was asked by another school counsellor she did not know to explain what happened and she was asked to provide a written statement.  ROE showed the school counsellor the screen shots she had taken of some of the snap chats she had received from JOHN DOE in her phone and these screen shots were sent to Defendant, BAKER, the Assistant Principal of WHHS.

31.    ROE later spoke to DEFENDANT BAKER, went through a lengthy narrative about what had happened including the events leading up to the violent sexual assault and battery, snap chats with JOHN DOE, the forced oral copulation and JOHN DOE's ejaculation on her shoe.  During her discussion with Defendant BAKER, she had told BAKER that she had recently come out to her parents, and provided her names of students who could collaborate that she knew JOHN DOE and events leading up to the sexual violence. At one point, ROE was asked to describe the male student.  Defendant, BAKER brought JOHN DOE's picture up on her computer, showed it to ROE and egregiously asked ROE if she "was SURE this was him as BAKER knew his mom, he got good grades, he was a football player, and came from a good family".  ROE positively identified him while at the same time feeling sick to her stomach. BAKER would not allow her to go to the restroom and she sat for hours in an interior office, isolated, alone and afraid. At this point, the school still had not called either the police or ROE's parents.

32.    After school, over seven hours after the 8 a.m. assault and battery, ROE'S mom was told what happened and immediately came to the school. ROE

COMPLAINT FOR DAMAGES AND JURY DEMAND

1   had previously been unable to call her mother as the administration had her phone.
2   The police were subsequently called by the school, ROE's father was later notified
3   and arrived at the school about 6:30 p.m.  He overheard the police asking
4   Defendants BAKER and others why the police had not been called sooner.

5        33.   ROE, once again, recounted what had occurred providing all relevant
6   information to the police and names of individuals that knew about the sexual
7   harassment leading up to the sexual assault, she and JOHN DOE's
8   communications, JOHN DOE's pictures, videos and interactions. The Special
9   Victims Sexual Assault unit arrived at the school that night and spoke to ROE
10  about what had happened, they took her phone and the shoe upon which JOHN
11  DOE had ejaculated into evidence. Defendant, GUHSD and its administrators,
12  were aware that the police had possession of this evidence.

13       34.   While at school that evening ROE's father asked Defendants BAKER,
14  REIDERER AND BALLARIN, the administrators, what interim measures were
15  going to put into place to make their daughter feel safe and be safe on her WHHS
16  campus during the investigation and whether JOHN DOE was going to be
17  suspended or expelled. ROE's parents were told by Defendant BAKER, that JOHN
18  DOE was not going to be suspended or expelled, and in no uncertain terms, that the
19  school was not going to do anything, there would be no restrictions or disciplinary
20  measures on JOHN DOE going forward.  They were told the school was not going
21  to provide *any interim measures* to assist ROE, their daughter and that now that the
22  police were involved, it was out of their hands.

23       35.   Defendant GUHSD had a duty to resolve complaints of sexual assault
24  promptly, equitably, to provide a safe and non-discriminatory environment, free
25  from sexual harassment and sexual violence. This egregious response by WWHS
26  administrators to ROE's allegations of sexual violence constituted deliberate
27  indifference. ROE was not offered any interim measures, was told that she could
28  have a few days off which would be considered excused absences. The school did

COMPLAINT FOR DAMAGES AND JURY DEMAND

1  not offer ROE any protection when she would return to school, she was not offered

2  any mental health counselling, and never advised of what resources were available

3  to her as a victim of a sexual assault.  It was clear that Defendants BAKER,

4  REIDERER and BALLARIN, the WHHS administrators were not appropriately

5  trained in their own school district policies and procedures relating to complainants

6  of sexual assault, sexual harassment or Title IX protocol involving protections that

7  were to be provided to complainants of a sexual assault, among other things.

8      36.    In that Defendant GUHSD, its staff and administrators were not

9  appropriately trained on their own sexual harassment, anti-discrimination policies

10  and procedures or Title IX protocols as to how to appropriately respond to

11  complaints of sexual violence. In that they failed to offer ROE any interim

12  protections from JOHN DOE, parents of ROE were forced to immediately

13  withdraw ROE from her high school of residence, away from her life-long friends,

14  daily peer and family supports. ROE's parents had no choice but to place her at a

15  charter school.

16      37.    On February 6, 2018, Justin Slagle, as guardian ad litem for ROE, in

17  an effort to protect his daughter against JOHN DOE, filed a Request for Civil

18  Harassment Restraining Orders against JOHN DOE. A temporary restraining order

19  against JOHN DOE was immediately issued by the Court to be in effect until the

20  restraining order hearing. This hearing was continued on the Court's own motion

21  on multiple occasions in that a criminal case was pending against JOHN DOE in

22  juvenile court-DNA evidence was being examined related to the semen that was on

23  ROE's shoe and Snap Chat records were being obtained in an effort to confirm that

24  ROE and JOHN DOE had been communicating on its social media site as reported

25  by ROE.  Charges had not yet been issued. Despite temporary stay away orders,

26  JOHN DOE and his friends continued to taunt ROE at every opportunity.  ROE

27  and JOHN DOE's younger siblings attended the same GUHSD elementary school

28  and JOHN DOE did not avoid negative contact with ROE as ordered by the Court

COMPLAINT FOR DAMAGES AND JURY DEMAND

1  and continued to harass ROE. ROE did not know her rights as she was never

2  trained by Defendant GUHSD on how to respond to harassment or retaliation.

3       38.    On or about February 26, 2018, ROE's parents advised GUHSD that

4  the charter school was not an appropriate placement and re-enrolled ROE into the

5  District. At this time the GUHSD's Title IX investigation was still ongoing,

6  however, neither ROE nor her parents were being provided any updates on the

7  investigation.  The District, once again, did not provide ROE with any interim

8  measures, no mental health counselling was offered, no safety plans were offered

9  to be implemented by GUHSD or school administrators to allow ROE to feel safe

10  and return to WHHS her school of residence. JOHN DOE, during all times

11  relevant, was allowed to remain at WHHS, be fully involved with his friends and

12  sports and was not restricted in any fashion.  Instead Defendants GUHSD and

13  Defendant BAKER offered ROE placement at another comprehensive GUHSD

14  high school, Santana High School. ROE had no friends at this school but was not

15  provided any other option. Defendant GUHSD or Defendant BAKER, BALLARIN

16  or REIDERER did not offer to move JOHN DOE and instead transferred ROE. As

17  education in California is compulsory, parents of ROE consented to the transfer

18  despite their daughter being away from her life-long friendship base. Of note is

19  that during no time relevant did GUHSD's Title IX coordinator or WHHS

20  administrators reach out ROE or her parents for clarification on any information

21  nor was ROE asked any follow up questions beyond statements she provided on

22  the day of the attack.

23       39.    On March 29, 2018 Defendant GUHSD, through its general counsel,

24  sent a letter to ROE's parent advising of the final results of its investigation into

25  the allegations of sexual assault involving JOHN DOE and ROE. The report

26  egregiously found ROE's allegations to be unfounded and lack credibility. At no

27  time prior to March 29, 2018 did GUHSD, its Title IX coordinator, Defendants

28  BAKER, BALLARIN OR REIDERER or its general counsel provide ROE or

---

13

COMPLAINT FOR DAMAGES AND JURY DEMAND

ROE's parents with any update to its investigation. The investigation report outlined a summary of the allegations, stated the procedures undertaken in its investigation, cited the policies, regulations and laws *supporting* its findings and ultimately provided a summary of GUHSD's findings and conclusions of law. Defendant, GUHSD, through its general counsel, baldly concluded that the allegations of sexual assault were unfounded and that ROE's statements were "less than credible". Quite egregiously ROE's allegations were never taken seriously, the investigation was patently incomplete, grossly one-sided, key witnesses identified by ROE were *never contacted*, the investigation was unequivocally gender-biased and discriminatory on its face, and rout with blatant inaccuracies. The conclusions ultimately rendered by the law firm of Dannis Woliver Kelley, GUHSD's general counsel, were based upon unfounded, gender-biased assumptions, erroneous and unsubstantiated facts, a complete ignorance of the intricacies of Snap Chat, contained blatant speculation and unsubstantiated hearsay.

40.    Moreover, Plaintiff is informed and believes and thereon alleges that at no point during its sixty-day investigation did GUHSD reach out to the police to enter into a Memorandum of Understanding surrounding the ongoing criminal investigation into the potential culpability of JOHN DOE and status of the items taken into evidence or allegations of sexual assault.  Sexual assault is a serious allegation and Defendant GUHSD owed it to its student population to keep informed into the ongoing investigation which ultimately could affect the ongoing status of JOHN DOE's continued enrollment at West Hills High School.

41.    Plaintiff is informed and believes that Defendant GUHSD, through its school administrators, were aware that ROE's phone with the Snap Chat application and shoe had been taken into evidence the day of the incident in an effort to further determine whether JOHN DOE, in fact, knew her, facts surrounding the prior sexual harassment which involved nude photos and videos of

COMPLAINT FOR DAMAGES AND JURY DEMAND

JOHN DOE, viability of gender-based violence and sexual assault and JOHN DOE ejaculating on her shoe. Moreover, Plaintiff is informed and believes and thereon alleges that several key and essential witnesses identified to GUHSD by ROE were either never actually questioned prior to rendering its conclusions, or some interviews were intentionally omitted from the investigation, were not provided or were untimely.

42.    The only time prior to the March 29, 2018 investigative report that Defendant GUHSD questioned ROE and her parents was the day of the actual incident and there was absolutely no follow-up questions or inquiries posed to the victim or her parents by responsible GUHSD staff including Defendants BAKER, BALLARIN and REIDERER, the Title IX coordinator, its general counsel or anyone for that matter.  The conclusions rendered by Defendant, GUHSD, through its general counsel, were overtly biased, lacked competence, breadth, depth, and the investigation were neither comprehensive, reasonable nor thorough.  Moreover, the use of GUHSD's general counsel, who also represents GUHSD on other school matters including litigation constituted a blatant conflict of interest.

43.    The restraining order hearing was ultimately held on July 17, 2018 even though the juvenile criminal matter was still open.  Contrary to the Court's admonitions, both Defendants JOHN DOE and his mother took the stand in the defense of JOHN DOE.  At the hearing JOHN DOE committed perjury to the court stating *he did not know ROE*, *was not around her on the day of the sexual assault*, among other significant mistruths. In light of the "he said, she said" nature of the testimony, the Court denied the permanent restraining order.  The lies that were levied by Defendant JOHN DOE caused Plaintiff ROE to sustain additional emotional distress and anxiety.

44.    Upon her enrollment at Santana High School during the Spring of 2018 continuing through the Winter of 2019, ROE was subjected to a continuing pattern of retaliation, discrimination, and harassment at the hands of Santana high

COMPLAINT FOR DAMAGES AND JURY DEMAND

school students, Defendant FALCONER, a school administrator, and Defendant GUHSD.  Episodes of  peer-on-peer harassment, several which were reported to school personnel and/or a school administrator, included the following (1) on a weekly basis being glared at and shunned by unnamed/unknown Santana High school students during passing periods, (2) having students call her a liar to her face on a weekly basis and (3) being told by a school acquaintance that students at an off campus sporting event were calling her a liar, mentally ill and a psychopath related to the sexual assault at WHHS.  On one occasion, a Santana High school male egregiously walked up to ROE while she was eating lunch by herself and asked her if she was in "rape corner". S.G.'s  boyfriend repeatedly harassed and followed her around school giving her stares and stalking her, S.G's boyfriend's cousin told her that what happened to her was her fault, and a female student told her she knew JOHN DOE, that he did not do what is claimed and that it was all ROE's fault.  Some of this harassment was communicated to a Santana High school teacher (Mrs. Pheasant) and Defendant FALCONER and nothing was done by the school site or the District.

45.     Other instances of harassment and retaliation at Santana High School included rumors circulating that ROE was a whore, avoiding ROE "because they did not want to catch a case", male bumping into ROE in the hallway taunting her with "Aye, JOHN DOE huh?".

46.     Plaintiff is informed and believes and thereon alleges that during certain times relevant, despite there being temporary restraining orders in place for a five month period and as of the criminal filing, stay away orders, Defendant JOHN DOE, the son of Defendants, HEIDI and GARRETT GROSCH, had continued during these times relevant to intentionally place himself in and around Plaintiff ROE several times a week for the last year and a half in an effort to continue to harass and annoy her in violation of Court mandated stay away orders. This harassment caused Plaintiff ROE to sustain continuing emotional distress.

COMPLAINT FOR DAMAGES AND JURY DEMAND

47. On September 11, 2018, at Santana High School, in response to her English teacher's assignment to write about a Student's own 9-11 tragedy, ROE wrote an essay about what had happened to her on the WHHS campus. Before writing the essay, ROE spoke with her English teacher asking if what happened to her last school year at WHHS would be appropriate. She was given the green light and wrote the essay. The essay she prepared on the school's Google drive was never shared with the class nor read aloud. No specific names were used in the essay. Several months later, in approximately January of 2019, ROE was called up to the office by a GUHSD Santana High school vice principal, Defendant FALCONER who critically and inappropriately yelled and chastised her for writing the 9-11 essay claiming the essay breached the confidentiality of JOHN DOE. There was absolutely no mention of the perpetrator's name, the school essay comported with the prompt and why this event was ROE's own 9-11 tragedy.

48. Plaintiff is informed and believes that Defendant, FALCONER was directed by a GUHSD administrator to confront ROE on her essay based on a tip from an unknown source. This retaliatory conduct by Defendant, GUHSD and its vice principal Defendant FALCONER, was harassing, insensitive, callous, and impervious to ROE, her physical and emotional well-being. This interaction opened raw physical and emotional wounds about the prior sexual harassment and sexual attack, underscoring to ROE that, once again JOHN DOE, the perpetrator, was reprehensively being protected by Defendant, GUHSD to her emotional and educational detriment. These actions constituted deliberate indifference. This interaction with a high school administrator caused her heightened anxiety and continuing emotional distress, constituted harassment and was retaliatory in nature. ROE's parents subsequently met with the administration to complain about this continuing harassment and retaliation but nothing was done. No investigation of these retaliatory actions was timely initiated by Defendant, GUHSD.

49. Plaintiff is informed and believes in approximately December of

COMPLAINT FOR DAMAGES AND JURY DEMAND

2018; JOHN DOE was charged by the San Diego District Attorney's office surrounding the sexual assault that occurred to ROE in January of 2018.

50.     The last episode of peer-on-peer harassment occurred on February 26, 2019, prompting ROE's parents, after unsuccessfully meeting with Defendant, FALCONER, to report the continuing harassment/retaliation, to pull her out of Santana High school and enroll her in an independent study.  Specifically, ROE was advised by a peer at school that several Santana High School female students including a student by the initials A.D. in her presence were talking about ROE at a Santana High School sporting event calling ROE a liar, mentally ill, a psychopath and discussing how she had made up the rape allegations against JOHN DOE. How these students knew about the factual allegations involving JOHN DOE was surprising coupled with the vindictive nature of the statements directed against ROE at a school sporting event. This harassment was reported to Defendant, FALCONER, who failed to appropriately address this harassment, timely investigate it or remedy this behavior. ROE has a right to be free from harassment at school, educated in the least restrictive environment, and attend her high school of residence. However, as a result of the biased, unreasonable incompetent investigations and egregious and inappropriate response by Defendant GUHSD to her complaints of sexual harassment and assault and subsequent instances of retaliation and harassment ROE has been forced to be educated in the most restrictive environment all to her educational-social-emotional detriment.

51.     The criminal matter involving JOHN DOE concluded on May 30, 2019. Plaintiff is informed and believes that justice in the criminal arena has been served with disciplinary measures against Defendant JOHN DOE, being currently pursued by Defendant GUHSD.  The status of any expulsion proceedings is not currently known.

////

////

COMPLAINT FOR DAMAGES AND JURY DEMAND

# FIRST CAUSE OF ACTION

## (Violation of Title IX against District, GUHSD)

52.     Plaintiff refers to, and incorporates by reference, paragraphs 1 through 51 as though fully set forth herein.

53.     Title IX of the Education Amendments of 1972 provides that no person in the United States shall, on the basis of sex, be excluded from participation in, or be denied the benefit of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance.

54.     Defendant, GUHSD is a public entity, school district receiving federal funds subjecting it to Title IX of the Educational Amendments of 1972 and its governing provisions.

55.     A private right of action for claims of Title IX violations is well established. *Cannon v. University of Chicago*, 441 U.S. 677(1979).  The US Supreme Court has also allowed recovery of monetary damages for Title IX violations. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992).

56.     The Rehabilitation Act Amendments of 1986 abrogate State's immunity under the Eleventh Amendment for Title IX violations. 42 USC 2000(d)(7).

57.     JOHN DOE bullied and sexually harassed ROE by posting naked pictures and videos of himself on social media a few days prior to the sexual assault, knowing she questioned her sexuality and ultimately forcing ROE to perform oral copulation on his person against her will.  This conduct is actionable under Title IX because it is based on sex, gender orientation and identity discrimination and was so severe and pervasive that it deprived ROE of access to educational opportunities and benefits and depriving her of right to be educated at her resident high school in the least restrictive environment.

58.     Defendant, GUHSD's responsibilities to address and respond to sexual harassment/sexual violence that occurred on its campus applies regardless

COMPLAINT FOR DAMAGES AND JURY DEMAND

of the potential application of any anti-bullying, anti-sexual harassment, anti-discrimination policy and regardless of whether a student has complained, asked the school to take action or identified the harassment as a form of discrimination. Plaintiff is informed and believes, and on this basis alleges, that GUHSD was aware of this harassment and that bullying involving sexting was widespread on its multiple District school campuses.  The failure to halt harassment and bullying of this nature of which a school district is aware constitutes intentional discrimination. *Franklin v. Gweinnet Clounty Public Schools*, 502 U.S. 112 (1991).

59.     Defendant GUHSD failed in its responsibilities to provide an environment free from gender identity, gender-oriented discrimination and sexual harassment to ROE who suffered severe psychological, physical trauma as a result of said failure.

60.     Defendant, GUHSD had control over JOHN DOE, the harasser, and the WHHS campus, where the harassment occurred.  GUHSD and its individual administrators, BAKER, BALLARIN, REIDEDER, had authority to take corrective action to end gender identity, gender-oriented discrimination and sexual harassment which was common place on its campus. Defendant GUHSD had a duty to train its students on gender-based discrimination, sexual orientation and sexual harassment and how one should handle and report acts of sexual harassment, harassment and discrimination yet, for all relevant times, failed to do so.  Defendant, GUHSD also had a duty to prevent retaliation against ROE and upon learning of the retaliatory conduct to affirmatively and timely investigate and extinguish such conduct, yet failed to do so.

61.     ROE suffered such severe and pervasive and objectively offensive discrimination, bullying and sexual harassment by JOHN DOE that it deprived her of access to the educational opportunities or benefits provided by WHHS.

62.     As a result of the sexual harassment and ultimate sexual assault of ROE by JOHN DOE, and as a result of GUHSD's failure to perform an unbiased,

COMPLAINT FOR DAMAGES AND JURY DEMAND

appropriate and comprehensive investigation into the sexual assault, and subsequent retaliatory conduct, ROE was forced to have to leave her campus, ultimately the second campus she was transferred to and now is in an independent home study because she is too traumatized to remain in a mainstream hostile school environment that Defendant GUHSD allowed and continues to allow to be perpetrated well in excess of a year and a half.  Moreover, Defendant GUHSD failed to follow Title IX and its  own school district policies and administrative regulations when it failed to provide ROE, as a victim of a sexual assault during the Title IX investigation, with any interim measures to keep her safe on her home school campus (measures that could have included,  among other things, implementation of  a safety plan, extra security measures, no negative contact contract, or assurance that JOHN DOE would not have access to ROE).  Defendant GUHSD failed to appropriately provide ROE with requisite mental health counselling or access to resources to address the trauma.  Furthermore, after the sexual assault ROE, Defendant GUHSD failed to keep ROE safe from continual ridicule, accusations, retaliation, glares, epithets, from school peers and school administration at Santana High School.

63.     Defendant and its WHHS school administrators, BAKER, and REIDERER had actual knowledge of the sexual assault as it was reported to administration by ROE's aunt within a few hours of the sexual attack. The sexual violence was reported to a responsible administrator who was duty bound to follow Title IX protocol and failed to appropriately do such.

64.     Defendant, GUHSD was deliberately indifferent to the sexual harassment, and sexual violence once reported.  Plaintiff is informed and believes and thereon alleges that WWHS administrators, BAKER, REIDERER and BALLARIN were not appropriately trained in their legal responsibilities under Title IX, State laws and District policies and performed a gender-biased, one-sided, investigation.  These WHHS administrators, as agents of Defendant GUHSD,

COMPLAINT FOR DAMAGES AND JURY DEMAND

failed to (1) *timely* question all teachers who interfaced with both ROE and JOHN DOE *on the day of the incident*, (2) waited five weeks to obtain statements from JOHN DOE and ROE's  second period teachers, (3) felt compelled to question whether the identification of the JOHN DOE was accurate due to the fact that he played football, was smart, came from a good family, (4) failed to interview all pertinent and key witnesses identified by ROE on the day of the incident as having knowledge of the events leading up to the sexual attack including the provision by JOHN DOE of nude photos and videos to ROE or events happening immediately thereafter, (5) failed to subsequently follow up with ROE or her parents on the status of the investigation, (6) only questioned ROE and her family on the day of the assault when she was in shock, (7) failed to timely follow up with the police about their investigation or enter into a memorandum of understanding despite knowing that they had taken ROE's phone with its Snap Chat account and shoe upon which it was alleged that JOHN DOE ejaculated.  No investigation was separately initiated by GUHSD inquiring into allegations that JOHN DOE was engaging in sexting and the dissemination of nude photos and video to ROE via social media.

65.     Defendant GUHSD's and its individual administrators were deliberately indifferent in the manner in which they conducted the Title IX Investigation, incorporated certain discriminatory facts into the report and subsequently incorrectly concluded that the sexual violence/battery did not occur and ROE lacked credibility.  Specifically, Defendant GUHSD, through its administrators and other involved in the Title IX investigation and report, blatantly and in an overly discriminatory fashion, made biased sexually oriented, gender-based statements which had no business being included in an impartial unbiased investigation.  Whether or not ROE might have thought she was gay at the time of the sexual violence, whether she "came out to her parents" prior to the sexual battery, her parents alleged response, whether her sexual orientation favored

COMPLAINT FOR DAMAGES AND JURY DEMAND

females had absolutely no bearing on whether she was subjected to sexually explicit social media, kissed, violated or sexually assaulted by a male, JOHN DOE on January 30, 2018 on school grounds. Moreover, statements in the report referencing her alleged sexual orientation as one of the bases for finding a lack of substantiation to allegations of sexual assault is the epitome of gender-biased based discrimination. Female students who question their sexuality can be victims of sexual harassment, be sexually harassed, be raped, sexually assaulted and battered in the same manner as their heterosexual female counterparts, as ROE was on the day of the incident. ROE's actual or perceived sexual orientation has nothing to do with anything relevant to an appropriate, impartial unbiased Title IX investigation. The only relevance her sexual orientation would remotely have to do with GUHSD's Title IX investigation was whether JOHN DOE engaged in gender-based sexual harassment (a hate crime) a matter that was not investigated.  The night before the assault, when ROE was asked to give him a blow job, she confided in him that she might be gay.  He subsequently responded, that he would "set her straight" and the next day messaged his friend SB, that "I did it". That reference was even made in the Title IX investigative report mentioning ROE's perceived sexual orientation and interactions with her family underscores the necessity for Defendant GUHSD, its administrators and others involved in the Title IX investigative process to undergo training on appropriate Title IX investigations and issues surrounding gender identity, sexual orientation and gender- bias discrimination.

66.  As a direct and proximate result of the acts alleged herein Plaintiff ROE has suffered and continues to suffer from physical and severe emotional injuries, including but not limited to severe emotional distress, fear, anxiety, emotional scarring, night terrors, emptiness, shame, sleeplessness, loss of self-esteem, suicidal ideations, embarrassment, stomach aches and intestinal issues, loss of friendships, disgust, haunting memories, invasion of privacy, feelings of

COMPLAINT FOR DAMAGES AND JURY DEMAND

worthlessness, school anxiety, stress, and isolation.  Plaintiff has been forced to have to be educated in one of the most restrictive educational environments all to her social emotional detriment. Plaintiff, ROE has incurred and will incur expenses for medical and psychological treatment as a direct result of Defendants' actions and inactions.

67.     PLAINTIFF, ROE is entitled to recover reasonable attorney's fees for Defendants' Title IX violations pursuant to 42 U.S.C. Section 1988(b) in an amount according to proof.

## SECOND CAUSE OF ACTION

(Violation of California Education Code Section 200 et. seq. as to Defendant GHUSD)

68.     Plaintiff refers to, and incorporates by reference, paragraphs 1 through 67 as though fully set forth herein.

69.     California Education Code section 200 et. seq. provides for a private right of action for intentional discrimination on the basis of sex which includes sexual harassment and sexual violence.

70.     Section 220 of the Education Code provides: "no person shall be subjected to discrimination on the basis of…gender, sex…in any program or activity conducted by an educational institution that receives, or benefits from state financial assistance or enrolls pupils who receive state student financial aid."

71.     The California legislature specifically declared its intent that an action under the Education Code shall be interpreted as consistent with Title IX of the Education Amendments of 1972, 20 USC 1681, et. seq. (Cal. Ed. Code 201(g)).  A plaintiff may maintain an action for recovery of monetary damages against a school district when the plaintiff alleges that she suffered severe, pervasive and offensive harassment that effectively deprived the plaintiff of the right of equal access to educational benefits and opportunities; the school had actual knowledge of the harassment; and the school responded with deliberate indifference. *Donavan*

COMPLAINT FOR DAMAGES AND JURY DEMAND

*v. Poway Unified School District*, 167 Cal.App.4th 567, 603-09 (2008).

72.     The California legislature recognizes that all pupils enrolled in state public schools have the inalienable right to attend classes on school campuses that are safe, secure and peaceful. Cal. Ed. Code 32261(a), Article I, section 28(c) of the California State Constitution.

73.     JOHN DOE, bullied and harassed ROE first by posting naked photos and videos of himself on Snap Chat and following up on learning that she might be gay, sexually assaulting her on the WWHS campus in an area that was known by many high school students to lack appropriate supervision.  This type of bullying, gender discrimination and sexual harassment is actionable under Cal. Education Code Section 220 et. seq. because it is based on gender, gender-identity and sex (JOHN DOE is male and ROE is female), and was so severe and pervasive that the violent sexual assault deprived ROE of her right to attend classes on a safe, secure, school campus, the actions had a harmful effect on her physical, emotional and educational well-being and caused substantial interference with ROE's ability to participate in her mainstream educational setting.

74.     Because of the bullying and sexual assault ROE experienced at the hands of JOHN DOE and due to the unreasonable response of Defendant GUHSD to the complaint of sexual violence/assault on its campus and its failure to remedy the situation, as alleged hereinabove, ROE was forced to transfer to two different schools and ultimately due to continuing peer on peer harassment at Santana High school and harassment of a SHS school administrator at the direction of GUHSD, ROE had to be enrolled in an independent study.

75.     Plaintiff is informed and believes, and on that basis alleges, that GUHSD had actual knowledge of the harassment which was reported on the day of the sexual violence and its failure to appropriately address this instance and the prior instance of sexting via social media constitutes intentional discrimination.

76.     Defendant GUHSD's responsibility to address and respond to sexual

COMPLAINT FOR DAMAGES AND JURY DEMAND

harassment, gender-based discrimination, sexting, harassment and bullying applies regardless of the potential application of any anti-bullying/anti-harassment policy and regardless of whether a student has complained, asked the school to take action, or identified the harassment as a form of discrimination. *US Department of Education, Office for Civil Rights, Dear Colleagues Letter, October 26, 2010.*

77.    Defendant GUHSD failed in its responsibilities to provide an environment free from discrimination, harassment and retaliation to ROE who suffered psychological trauma, physical and educational harm as a result of District's failures.

78.    Defendant GUHSD had control over JOHN DOE, the harasser, and the campus of WWHS and its officials had authority to timely, equitably, appropriately, and comprehensively, investigate allegations of sexting, sexual harassment and discrimination and take all corrective action to end such conduct. Moreover, prior to the sexual assault it was well known amongst many students at WWHS that the area where the sexual violence occurred lacked appropriate adult supervision.

79.    ROE suffered such severe, pervasive, and objectively offensive harassment at the hands of JOHN DOE that it has deprived her of access to the educational opportunities and benefits provided by the school.

80.    GUHSD has actual knowledge of the harassment at WWHS and was deliberatively indifferent as hereinabove alleged in their initial investigation of the sexual violence and harassment committed by JOHN DOE. Specifically, GUHSD demonstrated an unreasonable, callous, one-sided, biased, discriminatory and inadequate response to learning of the sexual assault, discrimination and prior sexual harassment against ROE committed by JOHN DOE.

81.    Further, as hereinabove alleged, GUHSD acted with deliberate indifference in failing to appropriately respond to subsequent complaints by ROE of harassment and retaliation by Santana High School students and a District

COMPLAINT FOR DAMAGES AND JURY DEMAND

Administrator, Defendant FALCONER stemming from the initial sexual assault to ROE's continuing psychological, physical and educational detriment.

82.     As a proximate result of Defendant's actions, Plaintiff ROE has incurred damages as hereinabove alleged including general, special damages in an amount to be determined at trial.

83.     Moreover, as a proximate result of Defendant's actions, Plaintiff ROE will be entitled to recovery of reasonable attorney's fees under California <u>Code of Civil Procedure</u> Section 1021.5 which provides that  a Court may award attorney's fees to a successful party against one or more opposing parties in any action which: (1) has resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit has been conferred on the general public or a large class of persons; and (3) the necessity and financial burden private enforcement renders the award appropriate.

## **THIRD CAUSE OF ACTION**

(Violation of Negligent Failure to Perform Mandatory Duties under Government Code Sections 815.6 and 820 in the Supervision and Training of Students on its WHHS campus as against Defendants GUHSD, BAKER, BALLIGIN, REIDERER, and DOES 1-5)

<u>Negligent Supervision of Students on the WHHS campus as to Defendants GUHSD, BAKER, BALLIRIN, REIDERER</u>

84.     Plaintiff, ROE refers to, and incorporates by reference, paragraphs 1 through 83 as though fully set forth herein.

85.     Defendant, GUHSD, and its WHHS and Santana High school administrators individually, BAKER, BALLARIN, REIDERER, and FALCONER at all times relevant, had affirmative mandatory duties under *Government Code* sections 815.6 and 820 to keep students safe on their campuses and protect

27

COMPLAINT FOR DAMAGES AND JURY DEMAND

students like Plaintiff, ROE from foreseeable harm, sexual violence, harassment, bullying, sexual violence, and gender identity-based discrimination by JOHN DOE and subsequent retaliation by Santana High School students and administrators. This mandatory duty included protecting students entrusted to their care by Plaintiff's parents and included the duty to exercise ordinary care in the supervision of students on its campuses.

86.    While school districts and their employees are not insurers of the physical safety of students, California law has imposed a duty on school authorities to supervise at all times the conduct of children on the school grounds and to enforce those rules and regulations necessary to their protection.  Defendant GUHSD, during all times relevant, had a duty to supervise students on the premises of WHHS and Santana High School. Cal. Education Code Section 44807. The standard of care imposed on school personnel in carrying out their duties to supervise students is identical to that required in the performance of their other duties, ie: that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances; either a total lack of supervision or ineffective supervision may constitute a lack of ordinary care on the part of those responsible for student supervision.  *Hoff v. Vacaville Unified School District.*, 19 Cal.4th 925 (1998).  Defendant GUHSD and its school personnel were responsible for student supervision.

87.    The duty of care owed by school personnel includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties. This principle has been applied in cases of employee's negligence resulting in injury to a student from another student. *J.H. v. Los Angeles Unified School District*, 183 Cal.App.4th. 123, 128-129, 141-142 (2010).

88.    Defendants, BAKER, BALLARIN, REIDERER , FALCONER and Does 1-5 are responsible for student supervision at WHHS and/or Santana High School.  They had a duty of care toward ROE and other students on the morning of

COMPLAINT FOR DAMAGES AND JURY DEMAND

the sexual assault to prevent sexual harassment, gender-based, gender identity discrimination, sexual violence and any form of harassment from occurring on the school premises.  FALCONER also had a subsequent duty of care toward ROE to supervise the students and address her complaints of retaliation and harassment by peers and administrators at Santana High School.

89.     These above-named Defendants breached their duty of care to ROE by failing to supervise the conduct of students and specifically JOHN DOE on the morning of the incident which occurred in an area known to many WHHS students as an area that consistently lacked sufficient adult supervision. Plaintiff is informed and believes and thereon alleges that the foyer of the gym/theater where the sexual violence occurred was not regularly patrolled by school personnel in charge of supervising the students on campus. This fact was known to JOHN DOE and much of the WHHS student population. Moreover, Plaintiff is informed and believe, and on that basis alleges, that on January 30, 2018, at the time of the sexual assault by JOHN DOE against ROE, WHHS had an insufficient student-to-adult ratio of supervision on its campus in that school administrators and staff were off campus in attendance at a district-wide training thus there was insufficient supervisory staff to appropriately and effectively monitor the high school students that morning. Moreover, Defendant FALCONER failed to supervise its students on the Santana High School campus, investigate or extinguish the retaliatory, bullying and harassing conduct.

90.     Under the Tort Claims Act, Section 815.2 (a) of the California *Government Code*, a school district is vicariously liable for injuries proximately caused by the negligence of its school personnel in failing to provide any or adequate supervision or training to its students. This breach of the individual defendant administrators in their duties to effectively supervise the school that morning including the foyer/gym area of WHHS or the subsequent retaliatory conduct gives rise to the vicarious liability of Defendant GUHSD.

COMPLAINT FOR DAMAGES AND JURY DEMAND

91.     As hereinabove alleged, the breach of the duty by GUHSD and the individual school administrators to supervise the students like JOHN DOE as well as Santana High school students has proximately and directly caused ROE serious psychological and physical injuries.  ROE has required mental health counselling and has been unable in the last half of the 2018-2019 and the current school year to participate in a mainstream educational environment all to her detriment.

<u>Negligent Training of Students and School Administrators on the WHHS campus as to Defendants GUHSD, BAKER, BALLIGIN, REIDERER</u>

92.     Plaintiff, ROE refers to, and incorporates by reference, paragraphs 1 through 91 as though fully set forth herein.

93.     As hereinabove mentioned, as part of Defendant, GUHSD, and its WHHS school administrators individually, BAKER, BALLARIN, REIDERER, mandatory duties under *Government Code* sections 815.6 and 820 to keep students safe on their campuses and protect student's like, Plaintiff, ROE from foreseeable harm, sexual violence, harassment, bullying, sexual violence, gender identity based discrimination by JOHN DOE, or subsequent retaliation, they had the parallel responsibilities to train their students and staff on effectively understanding what constitutes gender based discrimination, sexual harassment, sexual violence, including how to respond to acts of harassment and discrimination and what to do if they fell victim to such conduct. This included training on appropriate reporting procedures and rights available to victims of sexual harassment, discrimination, retaliation and sexual assault.

94.     During all relevant times, Defendants, and each of them, breached their duty of care to Plaintiff ROE when they failed to provide requisite sexual harassment, anti-bullying, anti-discrimination training or anti-retaliation to its high school students including ROE and JOHN DOE.  Defendants failed to train students, like ROE, as to how they should appropriately handle sexual harassment, bullying, sexting, retaliation, and all forms of discrimination including gender-

COMPLAINT FOR DAMAGES AND JURY DEMAND

identity bias, gender and sexual discrimination. This training should also have included how students should appropriately report such behavior to school officials.

95.     As hereinabove alleged as a proximate result of Defendants' breach of mandatory duties to provide training to students, Plaintiff has incurred substantial psychological and physical injuries and damages all to her detriment.

## FOURTH CAUSE OF ACTION

(Violation of Constitutional Rights, 42 USC 1983 against Defendants BAKER, BALLARIN, REIDERER, and Does 6-10)

96.     Plaintiff, ROE refers to, and incorporates by reference, paragraphs 1 through 83 as though fully set forth herein.

97.     42 USC Section 1983 is presumptively available to remedy a state's ongoing violation of federal law. 42 USC 1983; *AlohaCare v. Haw. Department of Human Services*, 572 F.3d. 740, 745 9th Cir. 2009). Title IX does not preclude constitutional Section 1983 violations.

98.     Plaintiffs are informed and believe, and on that basis, allege that Defendants, BAKER, BALLARIN, REDIERER and Does 6-10 inadequately communicated the anti-harassment, anti-retaliation and anti-bullying policies to students at WHHS and Santana High School and school personnel despite an awareness of instances of sexual harassment and sexting going on between students on its campus during all relevant times.

99.     Plaintiffs are informed and believe, and on that basis allege, that no training by BAKER, BALLARIN or REIDERER was provided to the students of WHHS during the 2017-2018 school year despite an awareness of sexting going on between male and female students on its campus during all relevant times prior to the sexual assault that occurred to ROE on January 30, 2018.

100.   Plaintiffs are informed and believe, and on that basis allege, that

COMPLAINT FOR DAMAGES AND JURY DEMAND

Defendant BAKER, BALLARIN, REIDERER and Does 6-10 are responsible for student supervision.  These individual defendants had a duty of care toward ROE and all other students to prevent the known sexting and sexual harassment of females like ROE occurring on its premises at WHHS.

101.   As a proximate result of Defendants 'negligent acts, Plaintiff has incurred general and special damages as hereinabove alleged.

102.    Plaintiff, ROE is entitled to recover reasonable attorney's fees pursuant to statute for the violations of Constitutional Rights under 40 USC 1983 in an amount according to proof.

### FIFTH CAUSE OF ACTION

(Violation of Unruh Civil Rights Act, Civil Code Section 51 et seq. against all Defendants)

103.   Plaintiff, ROE refers to, and incorporates by reference, paragraphs 1 through 102 as though fully set forth herein.

104.   The *Unruh Civil Rights Act*, California Civil Code 51 et. seq. provides that persons are entitled to full and equal services in all business establishments no matter what their sex, and that no business establishment shall discriminate against a person based on sex.

105.   California *Civil Code* Section 52(a) declares: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages… suffered by any person denied the rights provided in Section 51, 51.5 or 51.6." This section applies to the individual District WHHS administrators Defendants, BAKER, BALLARIN, REIDERER and Does 6-10. *Atkins v. St. Helena Hospital*, 843 F.Supp. 1329, 1339 (N.D.Cal. 1994).

106.   A school district is a business establishment for purposes of the *Unruh Civil Rights Act*. Cal. Civil Code Section 51.5; *K.T. v. Pittsburg Unified School District*, 219 F.Supp.3d. 970, 983 (N.D.Cal. 2016).

COMPLAINT FOR DAMAGES AND JURY DEMAND

107.   ROE was deprived of advantages, privileges and services of WHHS because of JOHN DOE's sexual harassment, cyber bullying, and sexual assault, of which GUHSD and the individual district administrator Defendants, were aware. ROE was also deprived of these services and privileges due to the Defendants deliberate indifference in their inappropriate and unreasonable response to ROE's complaint of sexual assault by JOHN DOE.  Plaintiff is informed and believes and thereon alleges that cyber bulling, and sexting was widespread not only at WHHS but on campus at other schools within the District.   JOHN DOE's harassment and sexual assault was so severe and pervasive that it has deprived ROE of access to educational opportunities and benefits provided by her high school of residence, WHHS.

108.   GUHSD and the individual school administration Defendants intentionally discriminated against ROE during all relevant times at WHHS based on her gender, gender-identity and sexual orientation.

109.   As a direct and proximate result of the above-mentioned violations of the *Unruh* Act, Plaintiff, ROE is entitled to recover *actual damages for each and every violation* of the *Unruh* Act, but in no case less than $ 4,000…for each and every offense. California *Civil Code* Section 52.

110.   Plaintiff, ROE is entitled to recover reasonable attorney's fees pursuant to statute for the violations of the *Unruh* Act in an amount according to proof.

## **SIXTH CAUSE OF ACTION**

(Sexual Battery against Defendant JOHN DOE)

111.   Plaintiff, ROE refers to and incorporates herein by reference, each and every allegation contained in paragraphs 1-51, inclusive, as though fully set forth herein.

112.   Plaintiff, ROE, alleges that on January 30, 2018, Defendant JOHN DOE, a minor and student at WHHS, committed sexual batteries upon Plaintiff

COMPLAINT FOR DAMAGES AND JURY DEMAND

ROE in the foyer of the theater/gym on the WHHS campus during school hours when he aggressively, and violently against ROE's will physically forced her to commit oral copulation on his person, hold his penis and place his penis in her mouth against her will.  Moreover, JOHN DOE forcefully against Plaintiff's will put his hands on her buttocks and down her pants with the intent to physically force to have sex with him against her will and to perform sexual acts and cause her severe emotional distress, anxiety and physical harm.

113.   Plaintiff, ROE did not consent to the forced physical touching from JOHN DOE or oral copulation she was forced to perform when she was forcefully pushed down by her shoulders onto a staircase and sexually assaulted.

114.   Plaintiff, ROE as a reasonable female student was offended and significantly injured both in mind and body by the inappropriate touching and sexual assault by Defendant, JOHN DOE.

115.   As a direct and proximate result of Defendant, JOHN DOE'S sexual assault and physically aggressive conduct, Plaintiff, ROE was substantially harmed.  Specifically, Plaintiff ROE suffered, and/or continues to suffer physical and severe emotional injuries, including but not limited to severe emotional distress, fear, anxiety, emotional scarring, night terrors, emptiness, shame, sleeplessness, loss of self-esteem, suicidal ideations, embarrassment, stomach aches and intestinal issues, loss of friendships, disgust, haunting memories, invasion of privacy, feelings of worthlessness, school anxiety, stress, and isolation. Plaintiff, ROE has incurred and will incur expenses for medical and psychological treatment as a direct result of Defendants' actions and inactions.

116.   The sexual assault by Defendant, JOHN DOE, as hereinabove alleged in the Complaint above against Defendant, JOHN DOE only, was willful, wanton, malicious and oppressive and justifies the award of exemplary and punitive damages.  Defendant JOHN DOE knew that Plaintiff had told him the night before that she thought she might be gay, and was not interested in having oral or vaginal

COMPLAINT FOR DAMAGES AND JURY DEMAND

sex with JOHN DOE at any point in time.  Despite her consistently telling Defendant, JOHN DOE "NO" after he grabbed her pulling her through the door of the WHHS gym/theater foyer, that early morning, JOHN DOE with malice, willful sexual aggression forced Plaintiff ROE to engage in oral copulation and physical touching against her will and without her consent. JOHN DOE knew she had expressed that she might be gay and in conscious disregard in an effort to bully, harass and discriminate against her based on her sexual orientation, forced her to have oral sex with him. This sexual assault was pre-meditated. Defendant, JOHN DOE acted with a conscious disregard of the consequences that were clearly foreseeable.

117.   Plaintiff ROE is informed and believes and therein alleges that Defendant, JOHN DOE knew or should have known that his sexual assault and harassment, as herein above alleged, would expose and did expose Plaintiff ROE to serious mental, physical and emotional harm.

## SEVENTH CAUSE OF ACTION

(Vicarious Liability against Defendants, HEIDI AND GARRETT GROSCH, only as the biological parent of Defendant JOHN DOE for his intentional acts of sexual battery-California *Civil Code* Section 1714.1)

118.  Plaintiff, ROE refers to and incorporates herein by reference, each and every allegation contained in paragraphs 1-51 and 101-117, inclusive, as though fully set forth herein.

119.   Section 1714.1 of the California *Civil Code* makes biological parents vicariously liable for the willful acts of their children up to the statutory cap of $ 25,000.  Willful is defined as whether the minor child has the mental capacity to intend the act that led to the result.

120.   Defendant HEIDI and GARRETT GROSCH are the biological parents of Defendant JOHN DOE who, during all relevant times, had custody and control of Defendant JOHN DOE.

COMPLAINT FOR DAMAGES AND JURY DEMAND

121.   Plaintiff ROE is informed and believes and thereon alleges that JOHN DOE had the mental capacity to intend the malicious actions of sexual harassment, bullying, gender-based sexual discrimination and sexual battery on ROE during all relevant times. Specifically, he intentionally sent Plaintiff ROE nude photos and videos of him masturbating on the social media website both without her consent, intentionally engaged in sexual harassment and gender-based discrimination

against ROE, intentionally and maliciously sexually battered ROE forcing her to commit oral copulation against her will and threatening her with harm if she reported the sexual assault. These actions were all intentional and JOHN DOE had the mental capacity to perform said malicious acts.

122.   In that ROE committed willful acts of violence against ROE, Defendant HEIDI and GARRETT GROSCH are liable to ROE as JOHN DOE's biological parents under the above-mentioned statute for special damages including medical and psychological expenses not to exceed $ 25,000 and, in an amount, according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ROE, through her guardian ad litem JUSTIN SLAGLE, prays for judgment against Defendants as follows:

## FIRST CAUSE OF ACTION

(Violation of Title IX against District, GUHSD)

1.   General damages in an amount according to proof;

2.   Special damages including past and future medical and psychological medical expenses in an amount according to proof;

COMPLAINT FOR DAMAGES AND JURY DEMAND

3.      Reasonable attorney's fees and costs in an amount allowed per statute and according to proof;

4.      Injunctive relief ordering GUHSD WHHS administrators, staff and students undergo sexual harassment, anti-bullying training, anti-discrimination and Title IX training.

## SECOND CAUSE OF ACTION

(Violation of California Education Code Section 200 et. seq. as to GHUSD only)

1.      General damages in an amount according to proof;

2.      Special damages including past and future medical and psychological medical expenses in an amount according to proof;

3.      Reasonable attorney's fees and costs in an amount according to proof under Section 1021.5 of the California Code of Civil Procedure;

4.      Injunctive relief ordering GUHSD WHHS administrators, staff and students undergo sexual harassment, anti-bullying training, anti-discrimination and Title IX training.

## THIRD CAUSE OF ACTION

(Negligent Failure to Perform Mandatory Duties under Government Code Sections 815.6 and 820 in the Supervision and Training of students and school personnel against Defendants GUHSD, BAKER, BALLARIN, REIDERER and Does 1-5 only)

1.      General damages in an amount according to proof;

2.      Special damages including but not limited to past and future medical expenses in an amount according to proof;

3.      Reasonable attorney's fees and costs in an amount according to proof under Section 1021.5 of the California Code of Civil Procedure;

////

COMPLAINT FOR DAMAGES AND JURY DEMAND

4.      Injunctive relief ordering GUHSD WHHS administrators, staff and students undergo sexual harassment, anti-bullying training, anti-discrimination and Title IX training.

## FOURTH CAUSE OF ACTION

(Violation of Constitutional Rights, 42 USC 1983 against Defendants BAKER, BALLARIN, AND REIDERER only and Does 6-10))

1.      General damages in an amount according to proof;

2.      Special damages including but not limited to past and future medical expenses in an amount according to proof;

3.      Reasonable attorney's fees and costs in an amount according to proof under 42 USC 1983 in an amount according to proof.

4.      Injunctive relief ordering GUHSD WHHS administrators, staff and students undergo sexual harassment, anti-bullying training, anti-discrimination and Title IX training.

## FIFTH CAUSE OF ACTION

(Discrimination in Violation of Civil Code Sections 51 and 52 of the California *Unruh* Act and against Defendants GUHSD, BAKER, BALLARIN, REIDERER and Does 1-5 only)

1.      Statutory damages for each discriminatory violation of this Act;

2.      Reasonable attorney's fees per statute.

## SIXTH CAUSE OF ACTION

(Sexual Battery against Defendant, JOHN DOE only)

1.      General damages in an amount according to proof;

2.      Special damages including but not limited to past and future medical expenses in an amount according to proof;

COMPLAINT FOR DAMAGES AND JURY DEMAND

3.      Punitive damages in an amount according to proof.

## SEVENTH CAUSE OF ACTION

(For Vicarious liability against Defendants HEIDI and GARRETT GROSCH ONLY for the willful acts of her son, JOHN DOE)

1.      Special damages including for recovery of past and future medical and psychological expenses up to a $ 25,000 statutory cap.

## AS TO ALL CAUSES OF ACTIONS

1.      For prejudgment interest in an amount according to proof;

2.      Costs of suit herein; and

3.      For such other relief as the Court deems just and proper.

Respectfully submitted,

DATED: October 9, 2019          **BRADDOCK LAW APC**

By:  _s/ Joshua C. Braddock_
Joshua C. Braddock, Esq.
Daniel W. Turek, Esq.
Counsel for Plaintiff, ROE, a minor
by and through her guardian ad litem,
JUSTIN SLAGLE

////
////
////
////
////
////

39

COMPLAINT FOR DAMAGES AND JURY DEMAND

1

## **DEMAND FOR JURY TRIAL**

2

3          ROE, a minor, through her guardian ad litem, JUSTIN SLAGLE, hereby

4  demands a trial by jury in this matter.

5

6  DATED: October 9, 2019                    **BRADDOCK LAW APC**

7

8                                      By:  *s/ Joshua C. Braddock*

9                                          Joshua C. Braddock, Esq.
                                            Daniel W. Turek, Esq.
10                                         Counsel for Plaintiff, ROE, a minor
                                            by and through her guardian ad litem,
11                                         JUSTIN SLAGLE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND JURY DEMAND