UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROE, a minor, by and through her Guardian ad Litem, JUSTIN SLAGLE,<br><br>                                         Plaintiff,<br>v.<br>GROSSMONT UNION HIGH SCHOOL DISTRICT et al.,<br>                                        Defendants. | Case No.: 19-CV-1966-CAB-BGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFF'S COMPLAINT**<br><br>**[Doc. No. 15]** |

This matter comes before the Court on a motion to dismiss and strike Plaintiff's complaint filed by Defendants Grossmont Union High School District, April Baker, Josh Reiderer, Robin Ballarin, and Michael Falcomer (collectively "Defendants"). [Doc. No. 15.] The motion has been fully briefed, and the Court deems it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff Roe, a minor and freshman at West Hills High School in Santee, California, by and through her Guardian ad Litem, Justin Slagle, alleges that on January 30, 2018, she was the victim of a gender-based sexual assault and battery committed by Defendant John

Doe, also a minor at the same high school. [Doc. No. 1 at ¶ 17.] As alleged in the complaint, at the time of the incident, Defendant Grossmont Union High School District ("GUHSD") and its school administrators Defendants Baker, Reiderer, and Ballarin, exercised substantial control over the high school campus and provided a lack of adequate and appropriate supervision. [*Id.* at ¶ 18–19.] Among other things, Plaintiff alleges Defendants failed to comply with its own policies and applicable law governing sexual harassment, failed to perform an unbiased investigation of the allegations against Defendant John Doe, failed to interview key witnesses, failed to investigate claims of Defendant John Doe's prior dissemination of nude photos and videos to Plaintiff, and failed to appropriately train its staff and administrators. [*Id.* at ¶ 20.] Further, Plaintiff alleges Defendants' investigation report concluded the sexual assault allegations were unfounded when the investigation process was incomplete, one-sided, gender-biased and discriminatory on its face. [*Id.* at ¶ 39.] While no restrictions were placed on Defendant John Doe, Plaintiff had to transfer to Santana High School where she was subjected to a continuing pattern of retaliation, discrimination, and harassment by students and Defendant Falconer, a school administrator there. [*Id.* at ¶ 44.]

Plaintiff filed her complaint on October 10, 2019, against Defendants Grossmont Union High School District, April Baker, Josh Reiderer, Robin Ballarin, Michael Falcomer, John Doe, and Heidi and Garret Grosch, alleging: (1) Violation of Title IX, 20 U.S.C. § 1681, *et seq.*; (2) Violation of California Education Code § 200, *et seq.*; (3) Negligent Failure to Perform Mandatory Duties, California Government Code §§ 815.6, 820; (4) Violation of Constitutional Rights, 42 U.S.C. § 1983; (5) Violation of Unruh Civil Rights Act, California Civil Code § 51, *et seq.*; (6) Sexual Battery; and (7) Vicarious Liability, California Civil Code § 1714.1.

On January 24, 2020, Defendants GUHSD, April Baker, Josh Reiderer, Robin Ballarin, and Michael Falcomer moved to dismiss and partially strike Plaintiff's complaint. [Doc. No. 15.]

## II. LEGAL STANDARDS

### A. Motion to Strike

Under Federal Rule of Civil Procedure12(f), the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A 12(f) motion to strike functions "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks and citations omitted). Such motions, however, "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1307 (S.D. Cal. 2017). In ruling on a motion to strike, the Court "must view the pleading under attack in the light most favorable to the pleader." *Id*. Matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being plead." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

### B. Motion to Dismiss

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted

inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Defendants move to partially strike Plaintiff's third cause of action for negligent failure to perform mandatory duties, move to dismiss Plaintiff's fourth cause of action for violation of constitutional rights, and move to dismiss Plaintiff's fifth cause of action for violation of California's Unruh Act. [Doc. No. 15.]

#### A. Negligent Failure to Perform Mandatory Duties in the Supervision and Training of Students

Defendants seek to strike a portion of Plaintiff's third cause of action, specifically identifying paragraphs 94–95 of the complaint. [Doc. No. 15-1 at 11–12.] Plaintiff's third cause of action consists of three separate theories of negligence: 1) failure to supervise students; 2) failure to train staff; and 3) failure to train students. Defendants seek to strike the third theory of failure to train students contending that no such duty exists under Title IX or the California Education Code. Plaintiff argues that California Education Code Sections 200 and 201 when read together creates this mandatory duty.

Plaintiff's third cause of action for negligence is brought under California Government Code Sections 815.6 and 820. Section 815.6 has three distinct requirements which "must be met before governmental entity liability may be imposed . . . : (1) an enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and (3) breach of the mandatory duty must be a proximate cause of the injury

4

suffered." *San Mateo Union High Sch. Dist. v. Cty. of San Mateo*, 213 Cal. App. 4th 418, 428 (2013). "The first requirement, which is ultimately dispositive here, is that the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken." *Id*. at 428. "Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." *Id*. at 428–29.

While the dividing line between a discretionary and mandatory duty is not always definitive, the California Supreme Court has articulated "rigid requirements for imposition of governmental liability under Government Code section 815.6." *Ellerbee v. County of Los Angeles*, 187 Cal. App. 4th 1206, 1215 (2010). "An enactment creates a mandatory duty if it requires a public agency to take a particular action. An enactment does not create a mandatory duty if it merely recites legislative goals and policies that must be implemented through a public agency's exercise of discretion." *Lockhart v. County of Los Angeles*, 155 Cal. App. 4th 289, 308 (2007) (internal citation omitted). "Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.'" *Guzman v. County of Monterey*, 46 Cal. 4th 887, 898 (2009) (internal citation omitted).

Plaintiff alleges that her third cause of action incorporates by reference California Education Code Section 200 *et seq*., which creates a mandatory affirmative duty for California public schools to address all aspects of discrimination, bias, and retaliation. California Education Code Section 200 states that it is "the policy of the State of California to afford all persons in public schools, regardless of their disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation . . . equal rights and opportunities in the education institutions of the state." Cal. Educ. Code § 200. In the same chapter, the Legislature declares that "all pupils have the right to participate fully in the educational process, free from discrimination and harassment." Cal. Educ. Code §

201(a). Further, it states, "It is the intent of the Legislature that each public school undertake educational activities to counter discriminatory incidents on school grounds and, within constitutional bounds, to minimize and eliminate a hostile environment on school grounds that impairs the access of pupils to equal educational opportunity." Cal. Educ. Code § 201(f). It also states, "There is an urgent need to teach and inform pupils in the public schools about their rights, as guaranteed by the federal and state constitutions, in order to increase pupils' awareness and understanding of their rights and the rights of others, with the intention of promoting tolerance and sensitivity in public schools and in society as a means of responding to potential harassment and hate violence."

Here, the Court finds Plaintiff's interpretation of a mandatory duty to train students attenuated by the statutory language. While the California Education Code recites legislative intent and highlights an urgent need to prevent and respond to the growing acts of hate violence and bias-related incidents at public schools, and to teach and inform pupils about their rights, there is no obligation created. The statutory language does not affirmatively impose a mandatory duty, nor does it provide any implementing guidelines, with respect to the training of students which is at issue here. Plaintiff therefore has failed to demonstrate an enactment imposes a mandatory duty to train students for a claim of negligence under Government Code Section 815.6. Accordingly, Defendants' motion to partially strike Plaintiff's third cause of action for negligence under a theory of failure to train students is **GRANTED**.

### B. Violation of Constitutional Rights Pursuant to 42 U.S.C. § 1983

Defendants contend Plaintiff's fourth cause of action fails because Plaintiff failed to allege the violation of any rights guaranteed by the federal Constitution or statutes. [Doc. No. 15-1 at 8–11.] Plaintiff contends that while she does not affirmatively state she is seeking Section 1983 relief under the Equal Protection Clause of the Fourteenth Amendment, her complaint includes substantive allegations that she is a member of an identifiable class for purposes of equal protection based on her sex and perceived sexual orientation.

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003) (internal citation omitted). "To establish a § 1983 equal protection violation, the plaintiff[ ] must show that the defendants, acting under color of state law, discriminated against [her] as [a] member[ ] of an identifiable class and that the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). Sexual orientation is an identifiable class for equal protection purposes. *See Flores*, 324 F.3d at 1137 (sexual orientation is an identifiable class for equal protection purposes). School officials are prohibited from intentionally treating students disparately on the basis of their protected status. *See Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000). The Ninth Circuit has "held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Here, Plaintiff alleges acts of discrimination based on her sexual orientation and gender identity after a sexual assault incident on campus and alleges that each individual Defendant administrators' actions were taken under color of state law in the course of their employment. [Doc. No. 1 at ¶¶ 7–10, 12.] The crux of Plaintiff's allegations is that Defendants failed to perform an unbiased investigation of the sexual assault allegations against Defendant John Doe. [*Id.* at ¶ 20.] Among other things, Plaintiff alleges that she discussed the prior events leading up to the incident with the Defendants, Defendants failed to follow their own policy of implementing interim measures for victims of sexual assault, placed no restrictions on Defendant John Doe, the investigation was one-sided and gender-biased, several witnesses were never questioned prior to the report, and Defendants were deliberately indifferent by making biased, sexually-oriented, gender-biased statements in their report. [*Id.* at ¶¶ 31, 34, 35, 38, 39, 41, 65.]

Defendants' citation to cases discussing adequate evidence on the record for similar claims to survive at the motion for summary judgment stage is inapposite. Plaintiff incorporated the above allegations and others into her fourth cause of action for violation of constitutional rights and at this stage the allegations are enough to plead a cognizable equal protection claim as they are "at least susceptible of an inference of discriminatory intent." *Monteiro*, 158 F.3d at 1026; *see also Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1117 (E.D. Cal. 2011) ("To plead a cognizable equal protection claim, [Plaintiff] must simply allege facts that plausibly show that [Plaintiff] was discriminated against as a member of an identifiable class") (citing *Flores*, 324 F.3d at 1135). Accordingly, Defendants' motion to dismiss Plaintiff's fourth cause of action for violation of constitutional rights is **DENIED**.

### C. Violation of California's Unruh Act

Defendants contend Plaintiff's fifth cause of action fails because Plaintiff has not demonstrated that the District is a business establishment under the Unruh Act. [Doc. No. 15-1 at 12–17.] Plaintiff contends that every California district court to reach this question has answered that public schools constitute business establishments within the meaning of the Unruh Act.

The Unruh Act guarantees all persons in California, regardless of sex or disability, "the full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever." Cal. Civ. Code § 51(b). While the California Supreme Court has not definitively said whether the Unruh Act applies to public schools, it has explained that the term "business establishment" should be construed "in the broadest sense reasonably possible." *Ibister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 78 (1985) (quotation and citation omitted). The Unruh Act applies to an organization that is "classically 'public' in its operation," namely one that "opens its . . . doors to the entire youthful population" of a city, or a "broad segment of the population," with "no attempt to select or restrict membership or access on the basis of personal, cultural, or religious affinity, as private clubs might do." *Id*. at 81, 84 (emphasis omitted).

California courts have applied the Unruh Act not just to for-profit commercial establishments but also to nonprofit institutions. *See, e.g., Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 619-20 (1995); *O'Connor v. Village Green Owners Assn.*, 33 Cal. 3d 790, 796 (1983) ("Nothing in the language or history of its enactment calls for excluding an organization from its scope simply because it is a nonprofit."). But the Unruh Act generally does not apply to a private social club, such as a private, religious school that is "an expressive social organization whose primary function is the inculcation of values in its youth members," and whose admission policies are "effectively selective and based on these values." *Doe v. California Lutheran High School Assn.*, 170 Cal. App. 4th 828, 838 (2009) (quoting *Curran v. Mt. Diablo Council of the Boy Scouts*, 17 Cal. 4th 670, 699 (1998)). Like the Americans with Disabilities Act, the Unruh Act is concerned with equal access to places of public accommodation. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 872 (9th Cir. 2004); *Warfield*, 10 Cal. 4th at 598.

Defendants contend the Unruh Act requires a stricter reading of "business establishment" and GUHSD was not operating here as a "commercial establishment" for the Unruh Act to apply. The Court finds the reasoning in the overwhelming authority holding that public schools can constitute business establishments persuasive. There is no dispute that GUHSD is classically public in nature, open to a broad segment of the population, and does not attempt to restrict membership in the way private institutions do, if at all. Consequently, in keeping with the California Supreme Court's instruction that "business establishment" should be construed in the broadest sense reasonably possible, GUHSD can be held liable under the Unruh Act. *See Z. T. by & through Hunter v. Santa Rosa City Sch.*, No. 17-CV-01452-WHA, 2017 WL 4418864, at *6 (N.D. Cal. Oct. 5, 2017) (and cases cited therein). This conclusion also squares with the ADA, which unquestionably applies to public schools. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017); *see also K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1094 n.1 (9th Cir. 2013) ("[A] violation of the ADA is, *per se*, a violation of the Unruh Act.") (quotation omitted). Accordingly, Defendants' motion to dismiss Plaintiff's fifth cause of

action for violation of California's Unruh Act is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss and strike the complaint is **GRANTED in part and DENIED in part**. Accordingly, it is hereby **ORDERED** as follows:

1) Defendants' motion to partially strike Plaintiff's third cause of action is **GRANTED**;
2) Plaintiff's third cause of action for negligence under a theory of failure to train students is **STRICKEN** at paragraphs 94–95;
3) Defendants' motion to dismiss on all other grounds is **DENIED**;
4) Defendants must answer Plaintiff's complaint on or before **March 20, 2020**.

It is **SO ORDERED**.

Dated: March 6, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge